UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

NO. 91-1341

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK WILLIAMS, JR.,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

(April 1, 1992)

Before THORNBERRY, KING, and DEMOSS, Circuit Judges.

THORNBERRY, Circuit Judge:

The defendant appeals his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Finding the district court's errors to be harmless, we affirm the conviction.

## I. Background

On October 31, 1990, DEA Task Force Officer Hughes was in the Dallas-Fort Worth airport routinely watching passengers deplane from an American Airlines flight arriving from Los Angeles. Officer Hughes noticed an individual, later identified as the defendant, Frank Williams, walk slowly down the jetway. Officer Hughes later testified that Williams appeared to be nervous and was

looking over his shoulder as he walked. Williams approached the American Airlines service attendant and asked from which gate the flight to Baton Rouge was departing. Officer Hughes, believing that Williams was exhibiting suspicious behavior, approached Williams, identified himself as a police officer, and asked to see Williams's ticket. Williams took his ticket out of the airline ticket folder and handed it to Officer Hughes. Officer Hughes testified that it was unusual for Williams to take the ticket out of the folder, as most people he stops merely hand him the entire folder. He also testified that Williams's hand was shaking as he handed him the ticket. The ticket had been purchased with cash that day and was a one-way ticket from Los Angeles to Baton Rouge, with a connecting flight in Dallas. The passenger name on the ticket was Frank Williams. Officer Hughes then asked to see Williams's ticket folder, and Williams handed him the folder, which had three baggage claim tickets stapled to the inside cover. After giving Williams his ticket and ticket folder back, Officer Hughes asked Williams for some identification. Williams showed him a Louisiana driver's license in the name of Frank Williams, Jr. with a New Orleans address. Officer Hughes then asked Williams whether he lived in Los Angeles or Baton Rouge, and Williams replied that he lived in Baton Rouge. Officer Hughes inquired as to the purpose of Williams's trip to Los Angeles and Williams stated that he had been visiting friends for a week or so. Officer Hughes returned Williams's driver's license and thanked him for his courtesy.

2

Officer Hughes left the terminal and together with his trained narcotic canine, Wally, drove to the area of the tarmac where the baggage handlers were loading luggage onto the Baton Rouge flight. Officer Hughes released Wally near three baggage carts that contained 60 to 80 pieces of luggage, and instructed Wally to "fetch the dope." (R., vol. 2 at 155). Wally began biting and scratching an unlocked suitcase that had a luggage identification tag with the name Frank Williams on it. Officer Hughes put that suitcase and two others with Williams's name on them in his car and drove back to the terminal. He took the suitcase that Wally alerted to into the terminal and to the gate at which Williams was waiting for the Baton Rouge flight. Officer Hughes asked Williams if the suitcase belonged to him, and Williams responded affirmatively. Officers Hughes testified that Williams's "chest began heaving up and down" when he asked him whether the luggage belonged to him. (R., vol. 2 at 123). Officer Hughes then asked Williams whether he could search the suitcase, and Williams consented.

Inside the unlocked suitcase, Officer Hughes found a pair of khaki pants with lumps in the legs and knots tied at the bottom of the legs. Officer Hughes asked Williams what the lumps were, and Williams replied that he did not know. From inside the pant legs, Officer Hughes retrieved two bundles that contained a white powdery substance, later identified as 2,004 grams of 92% pure cocaine. Officer Hughes informed Williams that he was under arrest. Williams was taken to the task force office where he was searched

3

by another officer, Officer Munday.  Officer Munday testified that he found a marijuana cigarette in Williams's wallet.

Williams was indicted and convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Williams appeals his conviction on the basis that the district court improperly admitted, as evidence of substantive guilt, Officer Hughes's testimony that Williams fit a drug courier profile, and that the district court improperly admitted evidence of the marijuana cigarette.

## II.  Analysis

"We review a trial judge's admission of evidence under an abuse of discretion standard." United States v. Moye, 951 F.2d 59, 61 (5th Cir. 1992) (citing United States v. Williams, 900 F.2d 823 (5th Cir. 1990)).  Although we find that the district court erred in admitting testimony regarding the drug profile and the marijuana cigarette, the errors were harmless in light of the other overwhelming evidence of Williams's guilt.  See United States v. Merida, 765 F.2d 1205, 1222 (5th Cir. 1985).

A.  The Drug Courier Profile

The Government concedes that drug courier profiles are not admissible as substantive evidence of guilt.  (Appellee's Br. at 12) (citing United States v. Beltran-Rios, 878 F.2d 1208, 1211 (9th Cir. 1989); United States v. Hernandez-Cuartas, 717 F.2d 552, (11th Cir. 1983); United States v. Quigley, 890 F.2d 1019 (8th Cir. 1989) cert. denied, 493 U.S. 1091, 110 S.Ct. 1163 (1990)).  The

4

Government maintains that the drug courier profile testimony in this case was not admitted as substantive evidence of Williams's guilt, but as background information. The record belies the government's assertion, however, and demonstrates that the district court admitted the testimony as evidence of Williams's guilt.

The plain language of the record confirms Williams's contention that the drug courier profile was admitted to prove his guilt. First, the district court expressly stated that it admitted the testimony for its probative value, even after the defendant's attorney objected to it on the grounds of relevance and unfair prejudice. (R., vol. 2 at 119-20). Second, in an unrelated bench conference, the defendant's attorney stated that the court "found it relevant, to whether or not a person is guilty of possession with intent to deliver cocaine, whether or not a person fits a drug courier profile," and the court agreed with this statement. (R., vol. 2 at 151-52). Third, the Government argued the profile as substantive evidence of Williams's guilt in its closing argument. After discussing each element of the profile that Williams matched, the Government attorney stated that the criteria of the profile

> by themselves do not add up to anything, but once that white, powdery substance was found and Officer Munday testified that he performed a field test on it, the drug courier profile, it proved to be not inaccurate. Nobody told you that it was a science. But it shows you one thing, that the defendant is guilty of the offense.

(R., vol. 3 at 28) (emphasis added).

In addition to the plain language of the record, the case law demonstrates that the profile evidence was admitted as substantive evidence of guilt. During Officer Hughes's testimony, he described

5

the profile itself and then proceeded to list the characteristics of the profile that Williams displayed. Other circuits have held that testimony expressly comparing an individual defendant's actions to a drug profile constitutes substantive evidence of guilt. See United States v. Quigley, 890 F.2d 1019 (8th Cir. 1989) ("This point by point examination of profile characteristics with specific reference to [the defendant] constitutes use of the profile not as background to explain or justify an investigative stop, but as substantive evidence that [the defendant] fits the profile and, therefore, must have intended to distribute the cocaine in his possession.") cert. denied, 110 S.Ct. 1163 (1990); United States v. Lui, 941 F.2d 844, 847 (9th Cir. 1991) ("As in Quigley, here [the DEA agent] tied [the defendant's] actions to a drug courier profile for the purpose of proving [the defendant's] guilt."). Furthermore, the district court's failure to instruct the jury to consider the profile testimony only as background information supports the conclusion that the testimony was admitted as substantive evidence of Williams's guilt. See United States v. Gomez-Norena, 908 F.2d 497, 501 (9th Cir.) (finding no plain error when the district judge twice cautioned the jury to consider the profile testimony only as background material), cert. denied, 111 S.Ct. 363 (1990).

In light of (1) the manner in which the testimony was admitted; (2) the district court's agreement with Mr. Fleury's statement that the court admitted the profile evidence because it was relevant to Williams's guilt; (3) the Government's statements

6

in closing argument that encouraged the jury to accept the profile as evidence of Williams's guilt; (4) the court's allowing the witness to compare Williams's conduct with the profile characteristics; and (5) the court's failure to limit the jury's use of the profile evidence, we cannot accept the Government's contention that the profile evidence was admitted as background information. The testimony regarding the drug courier profile was admitted as substantive evidence of Williams's guilt. This use of the drug profile was, as the government concedes, error. Quigley, 890 F.2d at 1024. Drug courier profiles have long been recognized as inherently prejudicial "because of the potential they have for including innocent citizens as profiled drug couriers." United States v. Hernandez-Cuartas, 717 F.2d 552, 555 (11th Cir. 1983). The profiles themselves are nothing more than a compilation of characteristics which aid law enforcement officials in identifying persons who might be trafficking in illegal narcotics. But the fact that an individual fits the profile does not necessarily mean that the evidence in a particular case will show that the person was carrying drugs. It is the evidence showing the person's connection to drug trafficking that must form the basis for the conviction. Id. While the government may introduce evidence that the defendant exhibited individual behaviors that make up the profile, it is something entirely different to tell the jury that all the behaviors together fit a law enforcement model of a drug courier. Despite the wide latitude district judges have in determining whether evidence is more probative than prejudicial,

7

<u>Moye</u>, 951 F.2d at 61, in our view the probative value of a drug courier profile is so low in relation to its prejudicial effect that its admission is error. <u>But see</u>, <u>United States v. Teslim</u>, 869 F.2d 316 (7th Cir. 1989) (holding that drug courier profiles may be introduced as substantive evidence of guilt); <u>United States v. Foster</u>, 939 F.2d 445 (7th Cir. 1991) (finding no error in the admission of profile evidence as evidence of guilt).

Having determined that the admission of the drug profile testimony was error, we must now determine whether the error was harmless. "[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." <u>Schneble v. Florida</u>, 405 U.S. 427, 92 S.Ct. 1056 (1972); <u>United States v. Lui</u>, 941 F.2d 844, 848 (9th Cir. 1991); <u>United States v. Jones</u>, 913 F.2d 174 (4th Cir. 1990) <u>cert.</u> <u>denied</u>, 111 S.Ct. 766 (1991).

At least three other circuits have addressed whether the admission of a drug courier profile as substantive evidence of guilt was harmless error. In <u>United States v. Lui</u>, 941 F.2d 844, 848 (9th Cir. 1991) the Ninth Circuit found that despite the district court's error in allowing the admission of a drug courier profile as substantive evidence of guilt, other overwhelming evidence of guilt rendered the error harmless:

> The remaining evidence in the record overwhelmingly demonstrated Lui's guilt. Lui was carrying nearly 28 pounds of high quality heroin in suitcases to which he had the keys and knew the numbers to the combination locks. His actions both before and after the discovery of the drugs were suspicious. Finally, his story for coming to the United States was completely discredited. Lui was unable to produce the jade figurines he claimed

8

to be carrying, and his nephew testified at trial that he did not own a shop and he had no plans to see Lui.

United States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991).

In United States v. Jones, 913 F.2d 174 (4th Cir. 1990), the Fourth Circuit found that the erroneous admission of profile evidence to prove guilt was harmless error in light of the other evidence of Jones's guilt. The evidence showed that an informant told the police that Jones was selling crack cocaine, and that he kept the crack cocaine in a brown medicine bottle in his pocket. The informant's story was corroborated by an undercover agent who had purchased crack from Jones in an undercover operation. The police instructed the informant to purchase crack from Jones, and the informant returned with the crack cocaine. The police searched Jones's house and seized 10.5 grams of cocaine, $2,173.00 in cash, and two guns.

In the leading Eighth Circuit case on this issue, United States v. Quigley, 890 F.2d 1019 (8th Cir. 1989) cert. denied, 110 S.Ct. 1163 (1990), the court found that

> [i]ndeed, Quigley's conviction is supported by such substantial evidence that it is somewhat difficult to understand why the profile evidence was proffered. Quigley had in his possession, in plain view, within an arm's reach in the car, one kilogram of high-quality cocaine. This, together with the notes on his person indicating earlier drug transactions, the frequent trips to Los Angeles with tickets paid for in cash even though he was unemployed and the large amount of money in his possession when arrested provided ample evidence for Quigley's conviction and also provides a substantial basis for us to affirm the conviction.

Id. at 1024 (citations omitted).  Two later Eighth Circuit cases also held that the use of a drug courier profile as substantive evidence was harmless error due to the overwhelming evidence of the defendants' guilt.  See United States v. Carter, 901 F.2d 683, 685 (8th Cir. 1990); United States v. Wilson, 930 F.2d 616, 619 (8th Cir.) cert. denied, 112 S.Ct. 208 (1991).

Excluding the improperly admitted evidence of a drug profile, the evidence in this case showed that (1) Williams appeared nervous when deplaning; (2) before handing Officer Hughes his ticket Williams removed it from the ticket jacket which contained the baggage claim tickets; (3) Williams's hand was shaking badly as he handed Officer Hughes the ticket; (4) Williams held a one-way ticket that had been purchased with cash that day, even though he said he had been visiting friends for a week or so; (5) the narcotics dog alerted to a suitcase with Williams's name on it; (6) Williams admitted that the suitcase belonged to him; (7) Williams's chest began "heaving up and down" when Officer Hughes asked whether the suitcase belonged to him; and (8) the officers found cocaine in the unlocked suitcase.  Although there is no direct evidence of Williams's knowledge that the cocaine was in his suitcase, the circumstantial evidence is overwhelming.  See United States v. Moye, 951 F.2d 59 (5th Cir. 1992) (noting that a defendant's state of mind cannot ordinarily be proved by direct evidence).  Because the evidence bearing on Williams's guilt is overwhelming, Officer Hughes's testimony that Williams's behavior matched a drug courier profile did not substantially influence the jury.  Therefore, the

10

error was harmless.  <u>United States v. Lui</u>, 941 F.2d 844, 848 (9th Cir. 1991).

B.  The Marijuana Cigarette

Williams also contends that the district court improperly admitted extrinsic offense evidence under F.R.E. 404(b).  The district court overruled the defendant's objection to Officer Munday's testimony that he found a marijuana cigarette in Williams's wallet.  Williams argues that the marijuana cigarette was not relevant to any issue other than his bad character, and that, even if relevant to an issue other than character, its probative value was substantially outweighed by the potential for unfair prejudice.

The admissibility of extrinsic evidence under Rule 404(b)[1] is governed by the two-part test established by this court in <u>United States v. Beechum</u>, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) <u>cert.</u> <u>denied</u>, 440 U.S. 920, 99 S.Ct. 1244 (1979).  First, the court must determine whether the extrinsic offense evidence is relevant to an issue other than the defendant's character.  Second, the probative value of the evidence cannot be substantially outweighed by its undue prejudice.  <u>See</u> <u>United States v. Rocha</u>, 916 F.2d 219, 241 (5th Cir. 1990) <u>cert.</u> <u>denied</u>, 111 S.Ct. 2057 (1991).  We review

---

[1]  F.R.E. 404(b) provides that "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

11

the admission of the marijuana cigarette under the two-part <u>Beechum</u> test.

### 1. Relevance of the Marijuana Cigarette

The district court found that Officer Munday's testimony regarding the marijuana cigarette found in Williams's wallet was relevant to his "motive, intent, preparation, plan, knowledge and so on." (R., vol. 2 at 170). We find that the evidence that Williams was carrying a marijuana cigarette in his wallet bears on the issue of his knowledge, preparation, plan, or absence of mistake. "Evidence is relevant if it makes the existence of any fact at issue more or less probable than it would be without the evidence." <u>United States v. Williams</u>, 900 F.2d 823, 826 (5th Cir. 1990). Evidence that Williams was carrying a marijuana cigarette in his wallet makes it slightly more probable that he knew he was carrying cocaine in his suitcase, and that he, rather than someone else, placed the cocaine in the unlocked suitcase.

### 2. Probative Value of the Marijuana Cigarette

Although evidence of the marijuana cigarette is relevant, we find that its probative value was slight. "The probative value of extrinsic evidence correlates positively with its likeness to the offense charged." <u>Beechum</u>, 582 F.2d at 915. As in <u>United States v. McDonald</u>, 905 F.2d 871, 875 (5th Cir.), <u>cert. denied</u>, 111 S.Ct. 566, (1990), there is a "large leap" from evidence that Williams was carrying a single marijuana cigarette in his wallet to an inference that he was knowingly carrying 2,004 grams of cocaine in his suitcase with intent to distribute it.

We need not determine, however, whether the probative value of this evidence was substantially outweighed by the prejudicial effect because any error that the district court may have committed in admitting the evidence was harmless. In a harmless error examination, "[w]e must view the error, not in isolation, but in relation to the entire proceedings." United States v. Brown, 692 F.2d 345, 350 (5th Cir. 1982). As discussed in the previous section, the evidence of Williams's guilt is overwhelming. Any error in admitting the evidence of the marijuana cigarette would not have substantially influenced the jury's verdict, and therefore, was harmless. United States v. Bernal, 814 F.2d 175, 184 (5th Cir. 1987) (issue in harmless error inquiry is whether the error itself had a substantial impact).

Although we base our holding on harmless error analysis, we note that the district court never required the government to articulate a basis for which the testimony regarding the marijuana cigarette could be admitted. This court has stated that "a trial judge faced with the problem of admissibility of other crimes evidence should exercise caution and require the government to explain why the evidence is relevant." United States v. Yeagin, 927 F.2d 798, 803 (5th Cir. 1991). Additionally, the court did not carefully weigh the probative and prejudicial value of the cigarette, but perfunctorily stated "I think that the possession of the marijuana cigarette is some evidence bearing on motive, intent,

preparation, plan, knowledge, and so on."[2]   (R., vol. 2 at 170).

This case represents a situation in which the district court should

have carefully considered the probative and prejudicial weight of

the evidence.

---

[2]   Although the defense filed a pre-trial motion in limine
in an attempt to prevent the Government from introducing evidence
of the marijuana cigarette during the trial, the district court
refused to rule on the motion before trial.  (R., vol. 2 at 92).
The district court ruled on the admissibility of the marijuana
cigarette during a bench conference:

> MR. ABLE (ATTORNEY FOR THE GOVERNMENT):  The only thing
>         I wanted to get into now was the fact he
>         searched the defendant and found a marijuana
>         cigarette inside the defendant's wallet,
>         . . . .
> THE COURT:  Okay.
> MR. FLEURY:  And, of course, we had that motion in
>         limine regarding that particular evidence.
> THE COURT:  And we have already dealt with that on the
>         motion in limine.
> MR. FLEURY:  I thought you had said to wait until the
>         context of the case.
> THE COURT:  Come on back up here, Mr. Able.  What rule
>         were we talking with about, 404(b)?
> MR. FLEURY:  Yes, sir.  And I have a brief on it.
> THE COURT:  Do you want to show me some authority real
>         quick?
> MR. ABLE [sic]:  It is in the brief that is filed with
>         the court.
> THE COURT:  I looked at that.  I thought maybe you
>         meant something else.
> MR. FLEURY:  Nothing other than the brief in support of
>         my motion.
> THE COURT:  Okay.  Well, I am going to overrule your
>         objection because I think that the possession
>         of the marijuana cigarette is some evidence
>         bearing on motive, intent, preparation, plan
>         knowledge and so on.  And to whatever extent
>         it has any, what might be viewed as, unfair
>         prejudice, I think its probative value and
>         probative weight outweighs that.
> MR. FLEURY:  As to what?  As to which of those is
>         it being offered for?
> THE COURT:  Pardon me.  We've already made the ruling.
>         Let's go on.  As to all of them.

14

## III.  Conclusion

We find that in light of the overwhelming evidence of Williams's guilt, any error in admitting the drug courier profile as evidence of guilt or evidence of the marijuana cigarette, did not have a substantial effect, and therefore was harmless.  For this reason, we AFFIRM the conviction.