SETH, Circuit Judge, dissenting:
I must respectfully dissent from the majority opinion on several points.
In my view, the district court abused its discretion in admitting gang affiliation evidence against the Defendants as substantive evidence of guilt of the conspiracy and underlying charges. The gang affiliation evidence is analogous to drug courier profile evidence that has been found in other jurisdictions to be inadmissible as substantive evidence of guilt. United States v. Williams, 957 F.2d 1238 (5th Cir.1992); United States v. Jones, 913 F.2d 174 (4th Cir.1990); United States v. Quigley, 890 F.2d 1019 (8th Cir.1989); United States v. Beltran-Rios, 878 F.2d 1208 (9th Cir.1989); United States v. Hemandez-Cuartas, 717 F.2d 552 (11th Cir.1983). The analysis of whether the gang affiliation evidence in this case was improperly admitted requires determining (1) whether the evidence was “profile” evidence, and (2) whether the profile was offered as substantive evidence of guilt. .
It is apparent also that the proof offered by the Government required an inference to be placed on another inference to reach the result the prosecution sought.
The majority correctly points out that in United States v. McDonald, 933 F.2d 1519, 1521 (10th Cir.1991), we defined profile evidence as “a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity.” In the case before us, the prosecution’s expert testified that the Defendants exhibited characteristics ■ that were indicative of Crips gang members. This listing of the Defendants’ characteristics was profile evidence because, as is discussed- more fully below, the evidence was offered and admitted to show that the Defendants were manufacturing and dealing crack as well as conspiring to do so. In other words, the Defendants, by the way they dressed or decorated the apartment, exhibited characteristics of persons engaged in the charged specific illegal activi *1570 ties of manufacturing and distributing crack and conspiring to do the same.
Profile evidence has been found to be inadmissible in most casés as substantive evidence of guilt because the profile easily fits innocent people. See United States v. Simpson, 910 F.2d 154 (4th Cir.1990). Profile evidence is an investigative tool commonly used to effectuate Terry stops. “However, proof that a person fits the profile, unsupported, by evidence of- drug trafficking, proves nothing.” Id. at 157 (citing United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
Although declining to decide whether the gang affiliation evidence was profile evidence admitted as substantive evidence of guilt, the majority concluded that it was admissible expert testimony, but in my view this was not enough to support its admissibility. After reviewing the record in this case, I am convinced that the prosecution offered this profile evidence as substantive evidence of guilt, despite its assertion that the evidence was merely explanatory, and that the court admitted the evidence as such.
By way of example, in United States v. Williams, 957 F.2d 1238 (5th Cir.1992), the court held drug courier profile evidence inadmissible even though the defendant’s luggage contained over 2,000 grams of cocaine. The prosecution maintained that it offered the profile evidence as “background” evidence as was done here in substance; however, the court concluded that the record clearly demonstrated that the evidence was in fact used as substantive evidence of guilt. Id. at 1241 (prosecution argued the profile as substantive evidence of guilt in closing argument and court admitted evidence for its probative value).
Similarly to Williams, the prosecution admits that the evidence was introduced to explain “the purpose of [the Defendants’] presence in the apartment,” and alleges that the purpose of the Crips is to distribute crack. Appellee’s Brief at 27 and 30 (emphasis added). The implication of its admission is that the prosecution was offering the gang affiliation evidence as substantive evidence that the Defendants were guilty of the alleged crimes because they were all . gang members and were in the same apartment, therefore,- they must have been pursuing the Crips’ “purpose.” Also, the prosecution asserts in a pretrial pleading that an “association with this type of gang is relevant to prove the specific intent crime of conspiracy and underlying substantive crimes of manufacturing and possession with intent to distribute crack cocaine.” Vol. I, document 68, at 2. This despite the double inferences required.
Moreover, throughout the trial the prosecution made numerous substantive contentions equating gang membership with committing the charged crimes. Perhaps the most egregious of these was the prosecution’s unsubstantiated statements in closing argument that the Defendants were Crips members and that the Crips’ “sole” purpose was to promote crack, when in fact there was no such testimony. Instead the trial testimony only showed distributing crack to be the “primary” purpose. Lastly, the district court admitted the evidence because it was probative of motive and intent to commit the crimes alleged, and in its instructions to the jury, the court did not limit the use of the gang affiliation evidence.
Not only does the record reflect that the gang affiliation evidence was used as substantive evidence of guilt, but as noted in Williams, case precedent illustrates that the mere act of comparing “an individual defendant’s actions to a drug profile constitutes substantive evidence of guilt.” 957 F.2d at 1241 (citations omitted). Thus, when the prosecution provided a laundry list of Crips gang member characteristics, such as wearing blue clothing, “sagging”, “mad-dogging” and decorating dwellings with predominately blue items, and then compared those characteristics to equivalent characteristics displayed by the Defendants, such as having a blue dish rack and trash can in the apartment and blue underwear, the prosecution was submitting the profile as substantive evidence of guilt.
This type of gang membership evidence is profile evidence because the record clearly shows that the Government sought to *1571 prove that by exhibiting the characteristics of Crips members, the Defendants were guilty of the charged conspiracy and underlying crimes. In keeping with the decisions in other jurisdictions, gang membership evidence was here improperly admitted and used in contravention of Fed.R.Evid. 403 as substantive evidence of guilt because its probative value was grossly outweighed by its extreme prejudice. This was here clearly demonstrated by jurors’ comments that they were afraid of gangs and by one juror having to be dismissed for fear of reprisals. This reaction of the jurors, and especially the need to excuse a juror, demonstrates that the Defendants were for all practical purposes tried for being gang members. Because the profile evidence was inadmissible under Fed.R.Evid. 403, it could not properly be admitted as expert testimony under Fed.R.Evid. 702 because Fed.R.Evid. 702 requires the same balancing as Fed. R.Evid. 403.
Even if the gang affiliation evidence is not properly classified as profile evidence, it was inadmissible for the reasons set forth in United States v. Roark, 924 F.2d 1426 (8th Cir.1991). In Roark evidence was admitted that the defendants were members of the Hell’s Angels and that the Hell’s Angels members are “involved in criminal activity and that they deal in methamphetamine and cocaine distribution and manufacture____” 924 F.2d at 1433. The court agreed with the district court’s own declaration that evidence that the defendants were involved in a group would have been admissible as evidence of a conspiracy, but that the district court had erred in admitting evidence of the general reputation of the Hell’s Angels. Id. at 1433. The court also agreed that the evidence was extremely damaging and found that its admission could not be remedied by a jury instruction because it was not an isolated piece of evidence. Id. at 1433-34. The court concluded that the jury could not disregard the theme of the trial: “guilty by association.” Thus the gang affiliation evidence was inadmissible because “it is inherently and unfairly prejudicial [and] deflects the jury’s attention from the immediate charges and causes it to prejudge a per-son____” Id. at 1434 (citations omitted).
Similarly, throughout the case before us, the prosecution relentlessly attempted to prove that the Defendants were guilty because of their association with the Crips. Like the Roark case, the prosecution in this case offered evidence of the general reputation of the Crips. By alleging that the Defendants were Crips, the prosecution was clearly attempting to prove guilt by association. Consequently, the “inherent risk of inflaming the jury, and of misleading it into focusing on the government’s unsubstantiated and uncharged allegations of drug crimes, was unacceptably high.” United States v. Simpson, 910 F.2d 154, 158. See also Roark, 924 F.2d at 1432-34.
There are many, many organizations in this country with purposes it would seem nobody could believe in, but each to his own, and in our legal system no one can be convicted by reason of . a membership.
Alternatively, I believe that the gang affiliation evidence was improperly used to prove the conspiracy charge because the nexus between exhibiting gang characteristics and being guilty of the alleged conspiracy is tenuous at best. Proof of a conspiracy requires a showing by direct or circumstantial evidence that
“two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, and that the defendant knowingly and voluntarily became a part of it____ “... Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy.”
United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.1990).
In United States v. Butler, 494 F.2d 1246, 1252 (10th Cir.1974), we held that
“the Supreme Court has warned, however, caution must be taken that the conviction [for conspiracy] not be obtained ‘by piling inference upon inference.’ Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674.... Guilt must be determined individually and not merely by association.”
*1572 Accord Fox, 902 F.2d at 1513. In Fox, 902 F.2d at 1514, we further recognized that guilt “is not a matter of mass application.” After looking carefully at the record, I feel that the jury was impermissibly allowed, even encouraged, to pile inference upon inference in order to convict the Defendants of the conspiracy.
First, the jury was presented with evidence that, among other things, the Defendants wore some blue clothing, two Defendants were “sagging”, and Meekes’ apartment was furnished primarily in blue. From this evidence, the jury was asked to infer that the Defendants looked and acted like Crips members. During pretrial motions hearings, the prosecution asserted that it did not need to prove that the Defendants were in fact gang members, but rather that by proving that they appeared to be Crips members, they possessed the requisite intent to commit the alleged crimes. This position was followed with the proof at trial. It is difficult to see how a Defendant can be guilty of conspiring to promote the alleged purpose of the Crips, i.e., to distribute crack, without even proving that the Defendant is a member of the gang.
It became clear by the end of the trial that the evidence was used to prove that Defendants were not only “members” but were in fact active members of the Crips. This inference, that the Defendants looked like Crips, therefore they were active Crips, was made even more attenuated by each Defendant’s denial that he was a Crip. I am unpersuaded by the officer’s testimony that both Meekes and Robinson admitted in California to being Crips members three years prior to the arrests which led to this case. At best the officer’s testimony creates an inference that the Defendants were Crips over three years ago. Moreover, the prosecution’s expert testified that only hard-core members of the Crips admit their affiliation to the police. If that were true, arguably Defendants Meekes and Robinson would not have denied their membership at-trial as they allegedly had admitted their membership to the police before, unless they were no longer or never had been Crips.
Also, the prosecution’s expert testified that there were various levels (peripheral, associate, hard-core) of involvement for Crips members. Yet at the-evidentiary motions hearing the expert testified that one may be an associate without committing major crimes. Vol. XIV at 39. At trial the expert also testified that some members are peripheral “wannabes” who presumably are not heavily involved with the gang. Vol. XVI at 350-51. Because there was no testimony elicited to prove the Defendants' position within the gang, the implication was that Defendants were hardcore members who according to the prosecution were involved in “major crack business.” Vol. XIX at 843. I can find no credible direct evidence proving the Defendants to be Crips; instead, their “membership” in the gang was proven by inference and innuendo.
Another inference was that because the Defendants were Crips, they necessarily were guilty of the conspiracy. For example, the prosecution argues in its brief that the gang affiliation evidence is “inextricably intertwined" with the crack conspiracy. Also, as previously noted, throughout this litigation the prosecution contended that the Defendants were or wanted to be Crips and that the Crips’ purpose was distribution of crack, which implies that the Defendants are guilty of distributing crack and conspiring to do so. I am particularly concerned about this inference because, although there is testimony that the California Crips’ “primary” purpose is to distribute crack, the prosecution’s experts also testified that the Crips members commit other crimes, and that individuals may join only for “self protection.” .Also, there was nó evidence of other specific occurrences of the Crips distributing crack which would have bolstered the police officer’s sweeping testimony as to the Crips’ “primary” purpose. There was no evidence whatsoever of specific sales of crack by the Crips in Albuquerque. Even assuming that the primary purpose of the Crips in California is to promote crack, that is not enough to prove a conspiracy because a specific conspiracy charge cannot be proven by a general propensity to commit crimes or mere *1573 association with a group which commits various crimes. See United States v. Fox, 902 F.2d 1508 (10th Cir.1990).
Defendant Robinson has been seriously harmed by the use of inferences. Other than the police officer’s testimony that Robinson was years ago a self admitted Crip, the only evidence pertaining to Robinson, which may have shown his association to the other Defendants or the gang, was his presence in the apartment and his wearing blue dickeys. However, the prosecution was allowed to offer all of the gang affiliation evidence, such as the decor of Meekes’ apartment and Meekes’ wearing blue underwear, against Robinson to imply that he was a Crip and therefore a conspirator. This inference is particularly troublesome because it does not logically follow that because others are allegedly dressed like Crips and because someone else’s apartment is decorated in blue, Robinson by inference is a Crip and by a second inference is a conspirator.
As the majority noted, the prosecution’s expert testimony only supported “an inference that the defendants were active” gang members and that the Defendants’ preference for blue “tended to show” that they were involved in a gang. Yet the jury was encouraged to use these -inferences, coupled with the inferences that the Crips’ “primary” purpose was to distribute crack and that being a Grip is tantamount to conspiring to promote crack, to convict the Defendants. This pyramid of inferences, when viewed in light of the entire record, do not “generate more that a mere suspicion of guilt, and ... [because this] evidence is equally consistent with both guilt and innocence, the conviction cannot be sustained.” Butler, 494 F.2d at 1252. Accord Fox, 902 F.2d at 1513-14.
I must also dissent from the majority’s position on Defendant Meekes’ plea agreement. Contrary to the district court’s holding that, if there were a contract, Meekes breached it by providing “false, misleading or materially incomplete statements” to investigators, the record shows the prosecution to be the materially breaching party of a valid plea agreement.
Although the district court made no determination as to the validity of the agreement, it must be concluded that a binding plea agreement was formed because the letter from the prosecution, which offered the plea agreement, was signed by Meekes and his attorney, and the prosecution treated the agreement as valid and its offer accepted by taking Meekes' testimony. The agreement provided that the prosecution would request a § 5K1.1 sentence reduction if Meekes would plead guilty to all counts and provide substantial assistance to the prosecution. This substantial assistance consisted of (1) providing information regarding his associates in drug trafficking, and (2) testifying against his codefend-ants. By entering into the valid agreement, the prosecution was obligated in good faith to diligently pursue the information and to afford the defendant the opportunity to effectuate his end of the agreement. This means that the prosecution is the breaching party if it terminates the agreement without in good faith giving Meekes the opportunity to provide substantial assistance. Consequently, the issue presented to the court is whether the prosecution terminated the agreement in bad faith before Meekes could fulfill his end of the contract.
In-an attempt to substantially assist the prosecution, Meekes gave a forty-five page sworn statement in which he provided over a dozen names and other information concerning drug trafficking. In addition, he promised to provide further information on his supplier within a week after he gave the statement. In fact, a prosecution representative failed to appear at a scheduled meeting with Meekes, at which time he presumably would have provided further information concerning drug trafficking and his supplier. Also, there is nothing in the record to show that he was unwilling to testify against his codefendants or that his testimony would not have been of substantial assistance. However, before Meekes could divulge any additional information, the prosecution terminated the agreement.
The purpose of an agreement such as the one at issue is not to obtain a confession from the defendant, but rather to obtain *1574 information that can be used by the prosecution in its investigation and prosecution of other suspects. The prosecution advanced as its reason for terminating the agreement that Meekes had lied during the initial oral testimony. However, these alleged lies only concerned Meekes’ criminal history, his affiliation with the Crips, and his prior residence and school in Washington, D.C. Therefore, they were irrelevant because at most these misstatements pertained only to personal matters or activity and thus were only a confession which was not the subject of the agreement. Thus he did not materially breach the agreement as found by the district court. It follows that because the alleged misstatements by Meekes were immaterial to the agreement, the prosecution could not have terminated it in good faith. Consequently, the termination was a material breach of the agreement because the prosecution eliminated Meekes’ chance to provide substantial assistance.
Perhaps the most egregious conduct by the prosecution occurred after it breached the plea agreement. After claiming that it obtained no useful information from the statement and that the statement was unreliable, the prosecution used Meekes’ statement as evidence during the hearing on standing and distributed copies to the other parties. In my view, the prosecution was prohibited from using the product of this plea agreement which the prosecution had sought to terminate.
Based on the foregoing, I must conclude that Defendant Meekes is entitled to a § 5K1.1 departure as that is the only appropriate remedy for the. prosecution’s breach of the plea agreement and the misuse of the material acquired pursuant to the agreement.
As an aside, I am very distressed that the sentencing guidelines permit a sentence reduction for a defendant who has entered into a plea agreement such as the one before us only upon a motion by the prosecution. In this agreement, the prosecution has sole discretion to determine whether Meekes had provided substantial assistance meriting a downward departure. We opined in United States v. Vargas, 925 F.2d 1260, 1266 (10th Cir.1991), that
“[wjhen a plea agreement leaves discretion to the prosecutor, the court’s role is limited to deciding whether the prosecutor has made its determination in good faith.”
(Citation omitted.) I am fearful that so limiting our review of the prosecutor’s conduct will open the door to the type of abuse that I see in this case, i.e., the prosecution enters into plea agreements promising to request downward departures, obtains useful information, uses it, and then terminates the agreement claiming that there was no substantial assistance without providing the defendant with the opportunity to fulfill his part of the contract.
The third basis for my dissent is that the district court imposed a two-level enhancement against Defendants Meekes and Jackson for possession of a firearm under § 2D1.1. However, both Meekes and Jackson were acquitted by the jury of the substantive charge of carrying or using a firearm in furtherance of a crime. Consequently, in my view, despite the obvious difference in the proof required, the court improperly imposed the upward departure because it effectively overrode the jury’s acquittal. It is pure speculation to hold that the two-level enhancement represents the difference in proof required.
I would reverse.