# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2023

Lyle W. Cayce
Clerk

No. 21-10588

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

YASSEIN ABDULFATAH SAID,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CR-292-2

Before RICHMAN, *Chief Judge*, and WIENER and WILLETT, *Circuit Judges*.

PER CURIAM:*

Yassein Abdulfatah Said ("Yassein")[1] was charged with three crimes stemming from his efforts to help his brother, Yaser Said ("Yaser"), evade

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] To avoid confusion, this opinion will refer to Yassein and his relatives by their first names.

No. 21-10588

arrest on a federal charge of unlawful flight to avoid prosecution.[2] A jury convicted Yassein on all three counts: (1) Conspiring to conceal a person from arrest in violation of 18 U.S.C. §§ 371 and 1071, (2) concealing a person from arrest (and aiding and abetting the same) in violation of 18 U.S.C. §§ 1071 and 2, and (3) conspiring to obstruct an official proceeding in violation of 18 U.S.C. §§ 1512(k) and 1512(c)(2). The district court eventually sentenced Yassein to an above-guidelines sentence of 144 months of imprisonment and two years of supervised release.

On appeal, Yassein contends that (1) the evidence was insufficient to support his conviction for conspiracy to obstruct an official proceeding, and (2) his above-guidelines sentence was procedurally and substantively unreasonable. He also claims that the district court erred by allowing hearsay testimony, although he concedes that the error does not merit reversal.[3] We affirm.

## I. Background

On New Year's Day 2008, Yaser murdered his teenage daughters because he was upset by their dating American men. On January 2, 2008, Yaser was charged in state court with two counts of Capital Murder and warrants were issued for his arrest. On August 21, 2008, he was charged in federal court with Unlawful Flight to Avoid Prosecution, and a federal arrest warrant issued. In December of 2014, Yaser was added to the FBI's Top Ten Most Wanted Fugitives list.

---

[2] Yaser was indicted in Texas state court for capital murder arising from the deaths of his two teenage daughters.

[3] Yassein's opening brief also raised a multiplicity challenge to Counts 1 and 3, but he has since withdrawn that challenge.

No. 21-10588

FBI agents first interviewed Yassein in April 2009. He claimed that he had last seen Yaser two days prior to the murders. Yassein claimed that his nieces' boyfriends had threatened Yaser and that those men were responsible for their deaths. Yassein also acknowledged that he had traveled to Dallas, picked up Yaser's son, Islam, and sent him to Egypt.[4]

Yassein and his family relocated to the Dallas/Fort Worth area in 2014. On September 23 of that year, FBI agents interviewed Yassein at his home. During the interview, Yassein complained at length about the FBI and its investigation, claiming it was causing problems for his family.

In 2017, the FBI acted on a tip from a maintenance man and determined that Yaser had been staying in Islam's apartment. But Yaser was able to flee hours before the FBI arrived. After the building issued a 24-hour notice to vacate the premises, Yassein took responsibility for the unit, argued with the property manager, and eventually cleared the apartment with a family member.

In August 2020, the FBI was able to track Yaser to a home in Justin, Texas, owned by Yassein, albeit in one of his daughter's names. After observing Yassein and Islam carrying trash away from the Justin home over the course of several days, the FBI moved in, capturing Yaser and eventually arresting Yassein and Islam.

## II. Charges and Trial

In November 2020, Yassein and Islam were charged by way of a three-count superseding indictment. Count 1 alleged that, between August 2017 and August 2020, Yassein and Islam conspired to conceal Yaser from arrest,

---

[4] Islam would return to the United States in 2011, moving into a Bedford, Texas apartment.

No. 21-10588

in violation of 18 U.S.C. §§ 371 and 1071. Count 2 alleged that Yassein and Islam concealed Yaser (and aided and abetted Yaser's concealment), in violation of 18 U.S.C. §§ 1071 and 2. Count 3 alleged that Yassein and Islam conspired to corruptly impede an official federal proceeding, in violation of 18 U.S.C. §§ 1512(k) and 1512(c)(2). On February 1, 2021, a jury found Yassein guilty on all three counts.

## III. Sentencing

The district court calculated Yassein's total offense level as 17 and his criminal history category as I. Those calculations yielded a guideline imprisonment range of 24 to 30 months, a supervised release range of one to three years, and a fine range of $10,000 to $50,000. The district court ultimately varied upwards, imposing a total sentence of 144 months imprisonment, two years of supervised release, three special assessments of $100 each, but no fine. Yassein timely appealed.[5]

## IV. Standard of Review

When considering a challenge to the sufficiency of the evidence supporting a conviction, we typically "review[] the record to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] But when, as in this case, a defendant fails to preserve his sufficiency challenge,[7] we

---

[5] The record does not include a copy of Yassein's notice of appeal, but an entry for it appears on the district court's docket sheet.

[6] *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[7] Yassein moved for a judgment of acquittal at the end of the government's case-in-chief, but he did not renew his motion at the close of all the evidence. This omission

No. 21-10588

"apply plain-error review."[8] To succeed notwithstanding this difficult standard, Yassein must show a clear or obvious error affecting his substantial rights.[9] We will only correct such an error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."[10] A sufficiency challenge will only be deemed clear or obvious if there was "'a manifest miscarriage of justice,' which occurs only [when] 'the record is devoid of evidence pointing to guilt' or the evidence is so tenuous that a conviction would be 'shocking.'"[11]

A challenge to the reasonableness of a sentence is typically reviewed for abuse of discretion.[12] However, an unpreserved claim of procedural unreasonableness is reviewed for plain error.[13]

"Any error in admitting . . . evidence is subject to harmless error review."[14] "Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required."[15]

---

means his sufficiency challenge is unpreserved. *United States v. Smith*, 878 F.3d 498, 502–03 (5th Cir. 2017).

   [8] *Smith*, 878 F.3d at 503.

   [9] *Id.*

   [10] *Id.* (internal quotation marks, brackets, and citation omitted).

   [11] *Id.* (quoting *United States v. Delgado*, 672 F.3d 320, 329–31 (5th Cir. 2012) (en banc) (citations omitted)).

   [12] *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) (applying that standard to claims of both procedural and substantive unreasonableness).

   [13] *See United States v. Castillo-Rubio*, 34 F.4th 404, 411 (5th Cir. 2022); *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

   [14] *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003) (citing *United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992)).

   [15] *Id.* (quoting *Williams*, 957 F.2d at 1242) (cleaned up).

## V. Discussion and Analysis

On appeal, Yassein challenges (1) the sufficiency of the evidence supporting his conviction on Count 3, (2) the procedural and substantive reasonableness of his sentence, and (3) the district court's resolution of particular evidentiary objections at trial, even though, as noted, he concedes that the third challenge cannot succeed. We address each challenge in turn.

### A. Conviction

### 1. Sufficiency of the Evidence

Yassein contests the sufficiency of the evidence supporting his conviction for conspiring to obstruct justice, in violation of 18 U.S.C. §§ 1512(k) and (c)(2). He contends that "the evidence [does] not show that [he] knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice[,] mislead agents in their search for Yaser."

As noted, we review this contention for plain error.[16] We conclude that there is more than enough evidence to affirm the conviction under that standard.

Count Three charged Yassein with a conspiracy in violation of 18 U.S.C. § 1512(k), the object of which was obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). Albeit in unpublished opinions, we have previously identified the elements of a § 1512(k) conspiracy as: (1) an agreement between the defendant and at least one other person to pursue the object of the conspiracy, (2) the defendant's knowledge of the unlawful purpose of the

---

[16] *See Smith*, 878 F.3d at 502–03.

agreement, and (3) that an overt act was taken by one of the conspirators toward carrying out the object of the conspiracy.[17]

Conspiracy to commit a particular substantive offense requires the degree of criminal intent necessary to commit the substantive offense itself.[18] 18 U.S.C. § 1512(c)(2) criminalizes the act of "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding." Therefore, the government must also demonstrate that Yassein acted 'corruptly.' A defendant "acts 'corruptly' under the statute when [he] act[s] 'knowingly and dishonestly, with specific intent to subvert or undermine the due administration of justice.'"[19]

Yassein contends that the government must also demonstrate that he knew the proceeding he was disrupting was a federal investigation—as opposed to any official proceeding—because the indictment charged him with doing so. He acknowledges, however, that "[t]his Court and the Supreme Court have not answered whether a sufficiency challenge 'must be judged by reference to the elements charged in the indictment, even if the

---

[17] *United States v. Mitchell*, 792 F.3d 581, 583 (5th Cir. 2015) (per curiam); *United States v. Coppin*, 569 F. App'x 326, 332 (5th Cir. 2014) (per curiam) (citing *United States v. Porter*, 542 F.3d 1088, 1092 (5th Cir. 2008)).

We recognize that our previous interpretations of § 1512(k) may be at odds with the Supreme Court's conclusions that a number of similarly-worded statutes do not contain an overt-act requirement. *See, e.g.*, *Whitfield v. United States*, 543 U.S. 209, 214 (2005) (gathering cases and explaining the relevant analysis). However, Yassein does not dispute the sufficiency of the evidence of an overt act, so we will leave this question for another day.

[18] FIFTH CIR. PATTERN JURY INSTRUCTIONS, § 2.15(A), note (2019 ed.) (addressing conspiracies charged under 18 U.S.C. § 371); *see Coppin*, 569 F. App'x at 331–33 (addressing a § 1512(k) conspiracy).

[19] *United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) (quoting *Coppin*, 569 F. App'x at 334).

indictment charges one or more elements not required by statute.'" *Musacchio* "abrogated Fifth Circuit precedent to the extent it provided that 'erroneously heightened jury instructions generally become the binding "law of the case" on appeal.'"[20] As Yassein notes, however, both *Musacchio* and *Bedoy* explicitly left open the question whether an 'erroneously heightened' *indictment* obligates the government to prove additional elements.[21] We decline to resolve this issue today and instead accept Yassein's contention *arguendo*.

Yassein's challenge apparently incorporates two theories. First, as noted above, Yassein suggests that he was unaware of the investigation's federal nature. Second, he claims that there is no evidence that he acted corruptly. We reject both claims.

First, the record is not devoid of evidence that Yassein was aware that the hunt for Yaser included a federal investigation. On the contrary, it contains ample evidence to support the jury's verdict. As Yassein acknowledges in his brief, "the evidence established that [Laurie Gibbs, an FBI agent] spoke with him and told him that [she had] a *federal* warrant for Yaser's arrest."[22] This interview occurred in 2014, six years after the FBI first obtained a warrant and listed Yaser, and three years *before* the beginning of the timeframe for the conspiracy charged in Count Three of the superseding indictment. Agent Gibbs testified that, during the interview, she

---

[20] *United States v. Bedoy*, 827 F.3d 495, 508–09 (5th Cir. 2016) (quoting *Musacchio*, 577 U.S. at 243).

[21] *Musacchio*, 577 U.S. at 244 n.2; *Bedoy*, 827 F.3d at 509.

[22] Yassein describes the agent as an investigator with "the Collin County District Attorney's Office." Gibbs was an FBI agent at the time she interviewed Yassein; she transitioned to the District Attorney's Office months later. Regardless, Yassein acknowledges that one of the investigators present during the interview, Mario Verna, was an FBI agent.

"presented [her FBI] credentials and told him who I was and who the other two individuals were that were with [her] and the purpose of . . . the interview." Record evidence also indicates that Yassein knew his name was on FBI posters identifying his brother as a fugitive. The government introduced the two posters into evidence at trial and both identified Yassein's name as one of Yaser's potential aliases. The government also introduced at trial a notebook containing a draft of a note addressed to the FBI, purportedly authored by Yassein. That document identifies one of Yaser's wanted posters by its NCIC number. A testifying FBI agent described the number as "quite specific" to the poster and warrant associated with it, and explained that a person "generally speaking, would not know that number unless" they read the poster. This evidence is more than enough to satisfy the very high "manifest miscarriage of justice" standard that is appropriate here.

Yassein's second claim is that the record is devoid of evidence that he acted corruptly. As noted, a defendant "acts 'corruptly' under the statute when [he] act[s] 'knowingly and dishonestly, with specific intent to subvert or undermine the due administration of justice.'"[23] Yassein cites the Black's Law Dictionary definition of dishonest as "not involving straightforward dealing; discreditable; underhanded; or fraudulent." He goes on to contend that: "To claim that building a secret room or a 'spider hole' is 'not straightforward dealing[,]' is 'discreditable[,]' is 'underhanded[,]' is 'fraudulent[,]' or is 'characterized by lack of truth, honesty, or trustworthiness' is to misapply the word 'dishonest.'" Yassein offers no precedent, however, to support his position. Neither does he develop his claim further by explaining *why* those definitions cannot be applied to his conduct. The best theory that may be inferred from Yassein's briefing is that

---

[23] *Delgado*, 984 F.3d at 452 (quoting *Coppin*, 569 F. App'x at 334).

No. 21-10588

a defendant cannot act dishonestly without lying or making a misleading statement.

Yassein offers no reason for us to think that the jury's verdict was a "manifest miscarriage of justice" in this respect. That alone is enough to doom his claim. But even if we were to interpret Yassein's briefing as proposing a misleading-statement requirement, this court has previously affirmed § 1512(c)(2) convictions without relying on a lie or omission made directly to an official. In *Delgado*, for example, this court held that the evidence supported a jury's verdict that a defendant acted corruptly when, "after learning that he might be the target of a federal investigation involving the sale of firewood, he sent [his co-conspirator] a text message stating that he needed to return" a bribe in an effort to hide his tracks.[24]

This court held similarly in *Bedoy* when it rejected a defendant's argument that he had not acted corruptly by instructing a co-conspirator "not to let the FBI into her apartment to talk to her" because a rational jury could infer that he was "instructing her to lie about the illicit aspects of their relationship if asked."[25]

Yassein has not identified any error, let alone a plain one. We therefore reject his sufficiency challenge.

## 2. Evidentiary Objections

Yassein also claims "that the district court erred in overruling [his] attorney's objections to hearsay." We need not delve into the merits of this claim, however, because he concedes that he "cannot argue that the errors .

---

[24] *Id.*

[25] 827 F.3d at 510.

No. 21-10588

. . cause 'harm' sufficient to justify reversal." This concession is dispositive.[26] We therefore affirm Yassein's conviction.

## B. Sentence

Yassein also challenges his sentence, claiming that it is both procedurally and substantively unreasonable. As noted, the district court calculated that the Sentencing Guidelines yielded an advisory guidelines range of 24 to 30 months of imprisonment. The government moved for an upward variance, and the district court ultimately varied upwards, sentencing Yassein to a term of 144 months of imprisonment and two years of supervised release.

Our "inquiry [into the reasonableness of a sentence] involves two steps."[27] "First, we must 'ensure that the district court committed no significant procedural error.'"[28] "Second, if the district court's sentencing decision is procedurally sound, we 'consider the substantive reasonableness of the sentence imposed.'"[29]

## 1. Procedural Reasonableness

As an initial matter, we review the procedural reasonableness of Yassein's sentence for plain error. Yassein claims that an abuse-of-discretion standard is appropriate. But, as the government points out, Yassein only objected to the *substantive* reasonableness of his sentence at his sentencing

---

[26] *See Mendoza-Medina*, 346 F.3d at 127 (citing *United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992)).

[27] *United States v. Fraga*, 704 F.3d 432, 437 (5th Cir. 2013).

[28] *Id.* (quoting *Gall*, 552 U.S. at 51).

[29] *Id.*

11

hearing. An objection to the substantive reasonableness of a sentence does not, without more, preserve a claim of procedural unreasonableness.[30]

Yassein claims that his sentence was procedurally unreasonable because the district court failed to explain adequately its reasons for varying upwards from the guidelines sentence it had calculated. He concedes that the district court "provided some reasons to justify the upwards variance," but nonetheless contends that the reasons were not "sufficient to justify the increase [in months of imprisonment] of 480 percent to 600 percent." He claims that such reasons were inadequate to meet the "high standard" required for such a large upwards variance. Yassein also attacks portions of the district court's reasoning as a litany of "rote statements" too vague to facilitate meaningful review. And Yassein also claims that the district court's statement that it had balanced his health and age against the other factors it had considered was too vague to allow for meaningful appellate review.

As noted, plain-error review requires a defendant to explain how the relevant error affected his substantial rights.[31] Therefore, when claiming that the inadequacy of a district court's explanation of its sentence constitutes plain error, a defendant must demonstrate "that there is a reasonable probability that, but for the district court's failure to explain the sentence adequately, [he] would have received a lesser sentence."[32]

---

[30] *Mondragon-Santiago*, 564 F.3d at 361; *see, e.g.*, *United States v. Martinez*, 872 F.3d 293, 303 (5th Cir. 2017) (similar).

[31] *See, e.g.*, *Smith*, 878 F.3d at 503.

[32] *United States v. Jackson*, 594 F. App'x 232, 236 (5th Cir. 2014) (citing *Mondragon-Santiago*, 564 F.3d at 364–65) (per curiam); *see Mondragon-Santiago*, 564 F.3d at 365 (affirming sentence despite finding district court's explanation of its sentence inadequate because defendant failed to "show that an explanation would have changed his sentence").

Yassein does not suggest that his sentence might have been different had the district court adequately explained its sentence. Neither does he reply to the government's brief noting this requirement. These failures—combined with the reality that the record is entirely devoid of any indication that further explanation would have led the district court to a different sentencing decision—doom Yassein's claim.

## 2. Substantive Reasonableness

We turn next to Yassein's claim of substantive unreasonableness. This claim is properly preserved, so we review the substantive nature of the district court's sentence for an abuse of discretion. While it is undeniable that the district court imposed a significant upward variance, we see no abuse of discretion in its decision to do so.

"Appellate review of the substantive reasonableness of a sentence is highly deferential."[33] "To determine whether a sentence is substantively reasonable, a district court should consider 'the totality of the circumstances, including the extent of any variance from the Guidelines range.'"[34] "Even a significant variance from the Guidelines does not constitute an abuse of discretion if it is 'commensurate with the individualized, case-specific reasons provided by the district court.'"[35] Instead, "[a] non-Guidelines sentence unreasonably fails to reflect the statutory sentencing factors set forth in § 3553(a) where it (1) does not account for a factor that should have received significant weight, (2) gives

---

[33] *United States v. Hudgens*, 4 F.4th 352, 358 (5th Cir. 2021) (cleaned up) (quoting *United States v. Hoffman*, 901 F.3d 523, 554 (5th Cir. 2018)).

[34] *Id.* (quoting *Gall*, 552 U.S. at 51).

[35] *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015) (quoting *United States v. McElwee*, 646 F.3d 328, 338 (5th Cir. 2011)).

significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[36]

Yassein offers a few attacks to the district court's sentencing decision, but none are compelling. He first contends that the district court erred by taking into account the fact that "Texas sought Yaser for capital murder" without conducting an individualized assessment whether "Yaser was a continuing threat to the public." He claims that this led the district court to make "the erroneous though understandable conclusion that a fugitive charged with Capital Murder is necessarily a greater threat to society than a fugitive charged with a financial crime or other 'white collar' offense." He suggests that "the balancing factor should be risk to the public and not the alleged offense."

First, there is no indication in the record that the court made such a sweeping conclusion about the nature of Capital Murder and white-collar crime. The court merely indicated that it took into account the fact that Yaser "was wanted for the double murder of two teenaged girls on a capital murder charge." More importantly, that fact goes to the nature of Yassein's offense, which the district court was obligated to consider.[37]

Yassein next suggests that his use of antisemitic slurs, while "indefensible," cannot be the "basis for a 480 to 600 percent variance." Yassein does not contend, however, that the district court could not consider his use of such slurs at all—or that they were the sole justification for the upwards variance. This claim is similarly unavailing. After noting a number of other facts it had considered, the district court explained that it took "into account the slurs that the defendant used during [the] investigation[,] which

---

[36] *Id.* (citing *Smith*, 440 F.3d at 708).

[37] 18 U.S.C. § 3553(a)(1).

No. 21-10588

[it] believe[d] were used as an attempt to divert attention away from [Yassein's] actions." This too goes to the nature of the offense.

Finally, Yassein takes issue with the district court's focus on the resources expended during the hunt for Yaser, particularly in Egypt.[38] He does not challenge the district court's factual findings, but claims the record suggests that the government's expenditures were "hardly different than the[y would have been had they been investigating a] much more common escape to Mexico or Canada." Assuming *arguendo* that this factual summary is correct, however, Yassein offers no reason whatsoever to question the district court's judgment on this point.

The upward variance applied in this case is undeniably significant. But sentencing is the province of the district court, and Yassein has not identified any error of the sort we enumerated in *Diehl*. And, we recently affirmed an upward variance of a similarly significant magnitude imposed on Yassein's co-defendant, Islam, in *United States v. Said*, No. 21-10455, 2022 WL 3097848, at *4 (5th Cir. Aug. 3, 2022) (unpublished).[39] "Although the degree of the variance is considerable and this court may have weighed the Section 3553(a) favors differently, we are not permitted to reweigh the factors."[40]

\*     \*     \*

AFFIRMED.

---

[38] Yassein suggested to investigators in 2014 that the family had ties there.

[39] In *Said*, we affirmed the district court's upward variance from a 21- to 27-month guideline range to a 120-month sentence.

[40] *Id.* (citing *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008)).