# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 13, 2022

Lyle W. Cayce
Clerk

No. 21-50140

United States of America,

*Plaintiff—Appellee*,

*versus*

Luis Guillermo Castillo-Rubio,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-CR-303-2

Before King, Jones, and Duncan, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Luis Guillermo Castillo-Rubio, also known as El Pariente, was a high-ranking member of the notorious Juarez Cartel between 2000 and 2011. He was convicted of three counts of conspiracy to import marijuana, cocaine, and heroin and three counts of conspiracy to possess with intent to distribute the same. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 963, 952(a), 960(a)(1), 960(b)(1). He received a life sentence on each count. He challenges his conviction and his sentence, raising six issues on appeal. We affirm.

No. 21-50140

## I.

The Juarez Cartel, also known as La Linea or the Vicente Carrillo-Fuentes Drug Trafficking Organization, had networks of conspirators in Mexico and the United States trafficking drugs. In addition to corrupt law enforcement, military, and political contacts throughout Mexico, the cartel employed assassins to kill, kidnap, and torture disloyal members and rivals. It also formed an alliance with the Barrio Azteca, another criminal gang. The cartel funded its extensive payroll through a "piso," or tax, which was a percentage of all the marijuana, cocaine, and heroin trafficked through its territory.

Collecting the piso and other drug proceeds was Castillo-Rubio's job. But he was more than a bagman. For the 11-year period covered by the indictment, Castillo-Rubio was the point of contact between corrupt Mexican law enforcement and the Juarez Cartel, eventually replacing his boss and serving as Vicente Carrillo-Fuentes's right-hand man. At trial, the jury heard testimony about how Castillo-Rubio directed the cartel's enforcement arm, authorizing murders, kidnappings, car bombings, and other violent acts in furtherance of the drug conspiracy.

At trial, Castillo-Rubio's defense was that he was *not* El Pariente. He argued that the seven witnesses identifying him as El Pariente were lying in exchange for money, reduced sentences, and immigration benefits for their families. The jury convicted Castillo-Rubio of all six counts, and the district court imposed six concurrent life sentences and concurrent five-year terms of supervised release. Castillo-Rubio appealed.

## II.

Castillo-Rubio raises six issues challenging his conviction and sentence. We address each in turn.

No. 21-50140

*A. The Anonymous Jury*

First, Castillo-Rubio contests the district court's decision to empanel an anonymous jury and impose safety measures. The court's order (1) limited the names of the jury members to the government and defendant's counsel; (2) assigned jurors numbers and required numbers to be used throughout trial; (3) required both parties to return jury lists after jury selection "and retain no other documentation of the members of the venire panel's names"; (4) limited knowledge of juror residence to "their residence zip codes"; (5) prohibited jurors from revealing the names and addresses of their employers; and (6) ordered precautionary instructions be given to jurors to minimize prejudice.

We review a district court's decision to empanel an anonymous jury for abuse of discretion. *See United States v. Krout*, 66 F.3d 1420, 1426 (5th Cir. 1995). "[T]he use of anonymous juries will be upheld where evidence at trial supports the conclusion that anonymity was warranted." *Id.* at 1427. We "may refer to evidence elicited at trial, in addition to evidence presented before trial." *United States v. Portillo*, 969 F.3d 144, 162 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1275 (2021).

Anonymous juries are "constitutional when needed to ensure against a serious threat to juror safety, if the courts also protect the defendants' interest in conducting effective voir dire and maintaining the presumption of innocence." *Krout*, 66 F.3d at 1427 (citations omitted). To assess whether using an anonymous jury was appropriate, we examine five factors:

> (1) the defendants' involvement in organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties; and, (5) extensive publicity

that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*Ibid.* Our review considers the "totality of the circumstances." *United States v. Branch*, 91 F.3d 699, 724 (5th Cir. 1996). "A lesser showing" on some factors "might be adequate where specific evidence exists linking the defendant to organized crime." *Krout*, 66 F.3d at 1427 n.7.

The district court found that the factors supported its limited anonymity procedures. It reasoned that the first, second, and fourth factors supported those procedures, and that the third and the fifth *could* support them. We see no abuse of discretion in the district court's decision.

First, the indictment charged Castillo-Rubio with serving at the highest level of an organized criminal cartel. Trial testimony established that the Juarez Cartel trafficked drugs from Mexico, bribed law enforcement, military, and political officials, and employed assassins to kidnap, torture, and murder those in their way. Castillo-Rubio eventually gained control of the cartel's operations in Chihuahua and directed ranking cartel members within his territory. This evidence specifically linked Castillo-Rubio to organized crime, satisfying the first factor. *See Portillo*, 969 F.3d at 162-63. Moreover, the cartel's notorious propensity to use violence to maintain its drug trafficking operation amply supports the district court's finding that the cartel "has a well-known capacity to harm others," thus satisfying the second factor. And the fourth factor, the potential for a lengthy sentence and large monetary penalties, "was easily met here" given that Castillo-Rubio faced and received six life sentences. *See id.* at 163.

As to the other factors, the district court did not abuse its discretion by concluding that the cartel's bribes to law enforcement, military, and political officials demonstrated past attempts to interfere with the judicial process. *See ibid.* For example, testimony that a Mexican military Humvee

with a manned machine gun crossed the Texas-Mexico border and prevented United States law enforcement from seizing a drug runner established that the Juarez Cartel would resort to violence on American soil to further its goals.

Nor did the district court abuse its discretion by concluding the trial might have drawn extensive media interest. While Castillo-Rubio argues that there was no actual media attention at trial, testimony about the cartels' war was expected to draw media interest, and two drug seizures involved Mexican military incursions into the United States. As the government correctly argues, "the potential for publicity was not fanciful." The ultimate lack of media coverage does not outweigh the other factors supporting the district court's decision, particularly given the lesser showing that is required given the evidence linking Castillo-Rubio to organized crime. *See Krout*, 66 F.3d at 1427 & n.7; *see also United States v. Herrera*, 466 F. App'x 409, 424 (5th Cir. 2012) (upholding anonymous jury procedures where all factors save the third were met).

Castillo-Rubio's argument challenging the implementation of the anonymity procedures also fails. In similar situations, we have found the defendant's inability to fully question panelists about their family's employers and the court's failure to explain the use of anonymity procedures were insignificant. *See Krout*, 66 F.3d at 1426. Here, the record likewise shows the district court's anonymity procedures balanced the protection of the jury with Castillo-Rubio's rights. Castillo-Rubio has therefore failed to demonstrate an abuse of discretion. *See id.* at 1426-28.

### B. Extraneous Offense Evidence

Castillo-Rubio contends the district court erred in allowing testimony that linked him to crimes outside the indictment. As he concedes, our review is for plain error. *See United States v. Ceballos*, 789 F.3d 607, 617 (5th Cir.

2015). When the challenged evidence is "intrinsic" to the offenses charged, the limitations in Federal Rule of Evidence 404(b) on admission of extraneous offense evidence do not apply, and the evidence is generally admissible. *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005).

Castillo-Rubio complains that Jose Acosta-Hernandez was permitted to testify that the Juarez Cartel had killed 1,500 people, that Acosta-Hernandez had killed people while working for the cartel, that he was present when people were being tortured, and that the Barrios Aztecas also committed murders. Despite Castillo-Rubio's assertion that no evidence linked him to these crimes, there was ample evidence that the Juarez Cartel employed networks of assassins and formed an alliance with the Barrios Aztecas, all to further the drug conspiracy. Acts committed in furtherance of the charged conspiracy are themselves part of the act charged, not "other acts" within the meaning of Rule 404(b). *United States v. Miller*, 116 F.3d 641, 682 (5th Cir. 1997).

Next, Castillo-Rubio complains about Irvin Enriquez's testimony describing the war between the Juarez Cartel and the Sinaloa Cartel culminating in the notorious "wedding murders." But this testimony showed the immediate context of Castillo-Rubio's actions—here, ordering murders—in furtherance of the charged conspiracy. *See United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998). There was no error in allowing the testimony, plain or otherwise.

### C. Prosecutorial Misconduct

Castillo-Rubio claims two types of prosecutorial misconduct: leading questions asked by the prosecutor throughout trial, and specific questions that he contends were intended to elicit a hearsay response. Because Castillo-Rubio did not object to any of these questions during trial, our review is for plain error. *United States v. Williams*, 620 F.3d 483, 488-89 (5th Cir. 2010).

As to the first claimed error, although the prosecutor repeatedly asked leading questions, Castillo-Rubio has not shown that such questioning "cast serious doubt on the jury's guilty verdict." *United States v. Delgado*, 672 F.3d 320, 338 (5th Cir. 2012) (internal quotation marks and citation omitted).

As to the second claimed error, Castillo-Rubio complains about hearsay testimony from six witnesses: (1) DEA Agent Omar Arrellano, (2) El Paso Police Officer Sal Silex, (3) Border Patrol Agent Juan Espino, (4) Border Patrol Agent Oscar Pinon, (5) Hudspeth County Deputy Sheriff Joe Tamman, and (6) DEA Agent Todd Brackhahn.

As to the first four witnesses, even assuming they testified to impermissible hearsay, Castillo-Rubio does not argue or attempt to demonstrate a reasonable probability that, but for their testimony, the jury would have acquitted him. *See United States v. Oti*, 872 F.3d 678, 693 (5th Cir. 2017). He therefore fails to show that any error affected his substantial rights. *See Williams*, 620 F.3d at 488-89. Deputy Sheriff Tamman's testimony described how he eventually located the drug-running SUVs and why the officers were conducting surveillance. But his testimony was not offered to prove that the SUVs drove a specific route and did not directly inculpate Castillo-Rubio. Because this testimony was not offered to prove the truth of the matter asserted, there was no error in admitting it, plain or otherwise. *See United States v. Kizzee*, 877 F.3d 650, 656 (5th Cir. 2017). Lastly, Agent Brackhahn's testimony was cumulative of other testimony (Hector Lopez's) and so could not constitute reversible error. *See United States v. Hall*, 500 F.3d 439, 444 (5th Cir. 2007). Nor did Brackhahn's testimony violate Castillo-Rubio's rights under the Confrontation Clause because Lopez testified at trial and was subject to cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

### D. Ineffective Assistance of Counsel

We do not consider Castillo-Rubio's ineffective assistance of counsel claims. As is usually the case, the record is not sufficiently developed to allow us to assess trial counsel's conduct, whether any claimed deficiencies were permissible trial strategy, or whether they affected the outcome. *See United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014). As for his claim that counsel failed to file objections to the presentence report, the record is also not sufficiently developed. *See ibid.* We therefore decline to consider these claims without prejudice to collateral review.

### E. Procedural Reasonableness

Castillo-Rubio contends for the first time on appeal that his sentence is procedurally unreasonable because the district court failed to adequately explain the sentence and failed to consider the 18 U.S.C. § 3553(a) factors by not addressing his arguments for a variance. But even assuming *arguendo* that there was plain error, Castillo-Rubio cannot show any effect on his substantial rights. He has not demonstrated, and the record does not show, that the district court would have imposed a lower sentence had it provided a more thorough explanation or more specifically addressed his arguments. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 365 (5th Cir. 2009). And his argument that the insufficient explanation affected his substantial rights because it has deprived this court of meaningful appellate review is foreclosed by circuit precedent "so far as within-Guidelines sentences are concerned." *Ibid.*

Castillo-Rubio's argument in his counseled brief that the district court plainly erred by treating the guidelines as mandatory and presuming the guidelines range was reasonable is entirely conclusory and therefore waived as inadequately briefed. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010).

No. 21-50140

*F. Substantive Reasonableness*

Finally, Castillo-Rubio challenges the substantive reasonableness of his sentence as "arbitrary" because it was not based on his individual circumstances and because the district court failed to provide a reasoned basis for the sentence imposed. "[W]e will presume a sentence within the current version of the Guidelines to be reasonable, and the defendant must rebut that presumption to demonstrate substantive unreasonableness." *Mondragon-Santiago*, 564 F.3d at 367.

Castillo-Rubio has not rebutted the presumption of reasonableness we give his within-guidelines sentence. He fails to show that his sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors. *See United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). His arguments are no more than a disagreement with the applicable guidelines range and the sentence imposed, which is insufficient to demonstrate that his life sentence is substantively unreasonable. *See United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010). Castillo-Rubio has not shown that the district court abused its discretion by imposing a substantively unreasonable sentence. *See United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009).

III.

Accordingly, we AFFIRM the judgment of the district court.